October 28, 2024

**VIA CM/ECF & FEDERAL EXPRESS**
United States Magistrate Judge Steven Locke
United States District Court, Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

      RE:    **Quintanilla v. Zanbofer Inc., et al.**
                Case No. 24-CV-01036 (LDH) (SIL)

                **Letter Motion for Approval of Settlement pursuant to:**
                *Cheeks v. Freeport Pancake House, Inc.,*
                **796 F.3d 199, 206 (2d Cir. 2015)**

Dear Judge Locke:

      This joint letter is submitted by counsel on behalf of plaintiff Kevin Quintanilla ("Plaintiff"), and defendants Zanbofer Inc., d/b/a Delicacies Gourmet, Zanbocafe, Inc., 1354 Old Northern Boulevard Inc. and James Zanfardino (each generically hereinafter referred to as the "Defendant," and collectively hereinafter referred to as the "Defendants") ("Plaintiff" and "Defendants" collectively hereinafter being referred to as the "Parties") in the above-referenced action. As we reported to the Court at the August 20, 2024 status conference, the Parties have agreed to settle the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") claims asserted in this civil action. The Parties respectfully request that the Court review and approve the written settlement agreement which is appended hereto as **Exhibit "A"**. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015).

**Plaintiff's Wage and Hour Claims**

      On February 9, 2024, Plaintiff filed his Summons and Complaint in this action alleging, *inter alia,* that Defendants engaged in improper practices in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 (the "FLSA") and the New York State Labor Law § 190, *et. seq.,* (the "NYLL") (the "Complaint"). Specifically, the Complaint alleges: (1) failure to pay minimum wages in violation of the FLSA and NYLL; (2) failure to pay overtime premium wages in violation of the FLSA and NYLL; (3) failure to pay spread of hours wages as required under NYLL and (4) failure to furnish required notices of wage and hour information in violation of the NYLL and New York State Wage Theft Prevention Act (collectively, Plaintiff's "Wage and Hour Claims").

      Plaintiff alleges that individual defendant James Zanfardino ("Zanfardino") is the controlling shareholder of, and exercises compete control over defendants Zanbofer Inc., d/b/a Delicacies Gourmet, Zanbocafe, Inc., and 1354 Old Northern Blvd. Inc. (collectively, the "Corporate Defendants"), which operates the delicatessen located at 1354 Old Northern Blvd., Roslyn, New York, corporate cafeterias, and off-site catering events. Plaintiff alleges that

1

throughout the six-year look back period,[1] he was employed by one or more of the Corporate Defendants and was integrated into all aspects of the Corporate Defendants' business. Plaintiff alleges that Zanfardino exercises operational control over the Corporate Defendants, has the power to fire and hire employees, control employees' schedules, determine the rate and method of compensation of employees, etc. such that he would be personally liable in this action under, *inter alia*, the Fair Labor Standards Act.

Plaintiff alleges that Defendants failed to pay Plaintiff at the required rate for overtime work, in violation of NYLL §§ 190 *et seq.* and FLSA, 29 U.S.C. § 207(a)(1); failed to pay Plaintiff an additional one hour of pay for each day that Plaintiff's spread of hours exceeded 10 hours, in violation of NYLL §§650, *et seq.*; failed to provide Plaintiff with required written notices pursuant to NYLL § 195(1); failed to maintain contemporaneous records of payments to Plaintiff, which were primarily paid by cash; and failed to provide Plaintiff with proper wage statements pursuant to NYLL § 195(3).

In addition to the FLSA and NYLL claims, Plaintiff alleges that, in or about June 2019, he paid the sum of $120,000, in cash, to the Defendants pursuant to an oral agreement to purchase a 6% shareholder interest in the Corporate Defendants. Defendant Zanfardino, however, refused to recognize his shareholder status, continuing to treat him as an ordinary employee despite retaining the money Plaintiff had paid. Plaintiff asserts causes of action sounding in promissory estoppel, and unjust enrichment (the "Non Wage and Hour Claims").

**Defendants' Denials, Defenses, and Affirmative Defenses**

On March 27, 2024, Defendants filed an Answer and Affirmative Defenses (the "Answer") to the Complaint. Defendants denied Plaintiffs' allegations that they had failed to pay minimum wage to Plaintiff for all hours worked, failed to pay overtime premiums to Plaintiff for all hours worked over forty in a given work week, and failed to make statutorily required spread-of-hours payments. Defendants asserted five affirmative defenses, including that Plaintiff's claims are barred by the applicable statute of limitations or laches, that Plaintiff received all wages due to him, that all actions by Defendants were taken in good faith, and that Plaintiff was an exempt employee.

Defendants' defense to Plaintiff's Wage and Hour Claims is premised in part upon their contention that Plaintiff's day-to-day duties included the supervision of more than two other employees, ability to make and change schedules, and authority to make operational decisions that affected and bound the Corporate Defendants on a daily basis. In addition, Plaintiff alleges that he had purchased a shareholder interest in the Corporate Defendants (*See* Complaint ¶¶ 82-87). Defendants contend that the foregoing factors bring Plaintiff squarely within the executive exemption recognized in both the FLSA and NYLL. In furtherance of Defendants' executive exemption argument, Defendants provided notice of twelve (12) witnesses and promised to proffer documentary evidence that would prove their defenses by no less than a preponderance of the

---

[1] Plaintiff commenced the Action on February 9, 2024. The statute of limitations for a claim brought under the New York Labor Law is 6 years. Plaintiff may therefore potentially recover unpaid compensation dating back to February 9, 2018, through the end of his employment on May 31, 2022.

2

evidence.

Plaintiff disputes that his job responsibilities rendered him an exempt employee, and that he had no ability to control his own work schedule, nor did he have supervisory authority. In addition, he contends that, even after paying $120,000 in or about June 2019 to purchase a shareholder interest in the Corporate Defendants, the Defendants never acknowledged his shareholder status, and continued to treat him as an hourly employee.

**The Settlement Reached by the Parties**

The Parties reached an agreement to settle Plaintiff's Wage and Hour Claims for Twenty-Five Thousand Dollars ($25,000.00) (the "Settlement Amount"). The Parties have also reached an agreement to settle Plaintiff's Non Wage and Hour Claims, the terms of which are set forth in a separate agreement. The Settlement Amount includes monies that will be paid to Plaintiff's attorneys pursuant to the reasonable wage and hour contingent fee arrangement entered into by and between Plaintiff and his counsel which is approximately 33% of the Settlement Amount and which is further detailed in this application.

The Parties agree that the terms and conditions of the settlement are fair, reasonable, and in the best interest of the Parties. The Parties have entered into a settlement that reflects a reasonable compromise of the Parties' disputed issues and any actual or potential claims. In addition, the Parties believe that the certainty of settlement is better than the uncertain outcome of protracted litigation.

**This Court Should Find that the Settlement is Fair and Reasonable**

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Barrientos v. Sweet Hills Stables, Inc.*, 2016 U.S. Dist. Lexis 21296 (E.D.N.Y. 2016) citing *Cheeks, supra*. Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Crabtree v. Volkert, Inc.*, No. 11-0529-WS-B, 2013 WL 593500, at *3 (S.D. Ala. Feb. 14, 2013). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *In re Penthouse Executive Club Compensation Litig.*, No. 10-CV-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is adequate indicator of fairness of settlement). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching." *Le v. SITA Infix Networking Computing USA, Inc.*, No. 07-CV-86, 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008) (quoting *Lynn's Food Stores, Inc. v. U.S. By & Through U.S. Dept of Labor, Employment Standards Admin., Wage & Hour Div.*, 679 F.2d 1350, 1354 (11th Cir. 1982)).

Here, there is no question that the settlement is not the product of "overreaching" by the employer. To the contrary, the settlement was the result of vigorous arm's length negotiations. The Parties are represented by counsel who are experienced in wage and hour law and who advised their respective clients on the benefits and risks of continued litigation, including depositions of

all parties, paper discovery, and anticipated motion practice. There was no undue influence to compel a settlement exercised over Plaintiff since Plaintiff no longer works for or interacts with any Defendants.

In determining whether the proposed settlement is fair and reasonable, a court should consider the totality of the circumstances, including the following factors: (1) the Plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion. *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332 (S.D.N.Y. 2012).

**Plaintiff's Range of Possible Recovery**

The total recovery to the Plaintiff and their counsel on account of the Wage and Hour Claims is $25,000.00. The proposed Settlement Amount is substantial and is within the range of reasonableness of recovery when compared to the various possibilities and probabilities of recovery.

Plaintiff maintains that, if he prevails at trial, he would be entitled to compensatory damages of at least $101,250, plus liquidated damages in the same amount, and applicable statutory damages of no less than $10,000. Plaintiff calculates his compensatory damages as follows:

Plaintiff alleges that, during the lookback period, he worked as many as 111 hours per week, and was not compensated for the number of hours over 40 hours per week. Plaintiff estimates, and has records to establish, that he was paid on average $1,500 to $2,000 per week. Plaintiff further contends that he was paid at a rate of $15 per hour, and worked an average of 100 hours per week. NYLL mandates that, for 60 of those hours, Plaintiff should have received pay equal to one and a half times his regular hourly rate. Plaintiff contends that he was paid for all hours worked at the regular rate of $15 per hour, instead of $22.50 per hour. Plaintiff would be entitled to recover the differential, amounting to $450 per week.

There are 225 weeks during the lookback period for which Plaintiff would be entitled to recover, for a total recovery of $101,250.

However, it is acknowledged and understood that, if Defendants were to prove that Plaintiff was properly classified as exempt from overtime under the executive exemption, Plaintiff may recover nothing on account of his Wage and Hour Claims.

This Settlement Amount takes into consideration the inherent risks of litigation, and the amount of time and money required to conduct discovery relevant to establishing Plaintiff's status as exempt or non-exempt, and the uncertainty of Plaintiff's ability to establish his claimed number of hours worked and amounts paid. It provides Plaintiff with a guaranteed and immediate recovery. The determination of whether a settlement amount is reasonable "does not involve the use of a mathematical equation yielding a particular sum." *Frank v. Eastman Kodak, Co.*, 228 F.R.D. 174,

4

186 (W.D.N.Y. 2005) (internal citations and quotations omitted). The settlement in the above referenced matter is substantial and represents significant recovery in light of the evidence and testimony that might be adduced at trial. Thus, the Settlement Agreement should be approved by the Court.

**Extent that the Settlement Will Enable the Parties to Avoid Anticipated Burdens and Expenses in Establishing Their Respective Claims and Defenses and The Seriousness of the Litigation Risks Faced by the Parties**

If settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the potential outcome. *Morris v. Affinity Health Plan*, 859 F.Supp.2d 611, 620 (S.D.N.Y. 2012). In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the Plaintiff...against the relief offered by the Settlement." *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *8 (S.D.N.Y. Apr. 16, 2012).

Defendants have disputed Plaintiff's entitlement to overtime pay, the total number of days and hours that Plaintiff worked, as well as the wages paid to the Plaintiff, which would require extensive discovery in this case. Additionally, given the rising costs of operating a small business such as a delicatessen, there are likely to be debts that Defendants owe to other entities in the future which could prevent the Defendants from having the assets and ability to compensate Plaintiff in any meaningful way. Plaintiff considered the risk not only of proceeding to trial on an "all or nothing" case the possibility that Defendants would appeal an adverse judgment, thereby lengthening the litigation further, but also of the Defendants filing for bankruptcy protection which could delay receipt of any monies by the Plaintiff and the additional judgments which could be entered against Defendants having priority over any award which could be obtained by Plaintiff against Defendants in the future at trial.

Therefore, given the defenses and practical considerations asserted by the Defendants, a settlement of $25,000.00, is a fair and reasonable settlement resulting from an arms-length negotiation between experienced counsel.

In light of these factors, the Settlement Agreement represents a reasonable compromise of the bona fide dispute in this matter. While Plaintiff's counsel anticipates favorable outcomes at trial and appeal, the nature of jury trial and appellate practice is inherently uncertain and lengthy. The settlement eliminates these risks and ensures that the Plaintiff will receive most of his due compensation. Weighing the benefits of an almost immediate, guaranteed, lump sum payment to the Plaintiff against the risks and burdens associated with proceeding with a lengthy litigation, the settlement is reasonable and these factors weigh in favor of approval.

**Attorney's Fees**

Under Plaintiff's professional services-contingency fee agreement with Plaintiff's counsel, Plaintiff's counsel is to receive one-third of any recovery and reimbursement for all expenses incurred in this case. The settlement agreement provides that Plaintiff's counsel will receive $ $8,000 in attorney's fees and reimbursement of costs and filing fees. This sum is far less than the

value of the legal services provided, given the number of hours worked and the attorney's billing rate.

During the pendency of this action, the Parties exchanged informal discovery and analyzed the claims and defenses at issue extensively. Plaintiff's attorneys expended significant amounts of time in preparing and commencing this action with the filing of the Summons and Complaint, having communications with Defendants' counsel, participating in negotiations with Defendants' counsel in furtherance of settlement of the action in its entirety, engaged in communications with this Court and worked with Plaintiff to ascertain and compute the damages suffered by Plaintiff.

A Declaration of Plaintiff's counsel in support of this instant motion with accompanying billing records is annexed hereto as **Exhibit "B"**.

### Whether the Settlement Agreement is the Product of Arm's-Length Bargaining

A "presumption of fairness, adequacy and reasonableness may attach to a...settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *Slobodan Kric v. Major Auto Cos.*, 2015 U.S. Dist. Lexis 171730 (E.D.N.Y. 2015), citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotations omitted). The Parties engaged in negotiations over the course of the litigation of this case in order to achieve this settlement. At all times, the Parties' negotiations were on an arm's length basis. Because the settlement involves clear and bona fide wage disputes in contested litigation and were resolved through an arm's length settlement process, it should be granted judicial approval.

### Possibility of Fraud or Collusion

"Absent fraud or collision, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 05 CV 10240, 2007 WL 2230177, at *4 (S.D.N.Y July 27, 2007). Here, the settlement was reached after the Parties were able to fully evaluate the strengths and weaknesses of the claims and defenses presented in the case. At all times, negotiations took place between experienced counsel and were at arm's-length, and the Parties were duly advised of each incremental advancement made in the settlement negotiations. As there was no fraud upon the Parties or collusion between counsel, the settlement should be approved.

### Conclusion

For the reasons set forth herein, the Parties respectfully request that this Court approve the settlement as reflected in the Settlement Agreement.

Respectfully submitted,

| */s/ Gayle Gerson* | */s/ David Mahoney* |
|---|---|
| Gayle S. Gerson | David J. Mahoney |
| JASPAN SCHLESINGER NARENDRAN | RIMON P.C. |
| Attorneys for Plaintiff | Attorneys for Defendants |
| 200 Garden City Plaza, 5th Fl. | 100 Jericho Quadrangle, Suite 300 |
| Garden City, NY 11530 | Jericho, New York 11753 |
| ggerson@jaspanllp.com | (516) 479-6337 |
| | david.mahoney@rimonlaw.com |

GSG/#